IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.

GABRIEL TORRES-GOMEZ,

        Defendants.

CR. NO. 09-904 LH

## AMENDED RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

**COMES NOW** the United States of America and files this amended response[1] to the Defendant Torres-Gomez's motion to suppress evidence.

### I.  PROCEDURAL BACKGROUND

On March 3, 2009, Albuquerque police officers arrested Torres-Gomez in a parking lot. On April 9, 2009, a grand jury returned an indictment charging Torres-Gomez with possessing with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). On November 3, 2009, Torres-Gomez, through counsel, filed a motion to suppress the evidence against him, i.e., the heroin he possessed.

### II. FACTS

On March 3, 2009, Albuquerque Police Detective Derrick Wulff was working undercover in a parking lot at 300 Lomas NE. He noticed a person, later identified as Johnny Gallegos, engaging in what appeared to be a series of clandestine transactions.

---

[1] This amended response contains no new legal arguments, but corrects typographical errors in the original response.

Gallegos was standing next to a green van.  Gallegos was making contact with people who approached him either on foot or on bicycles and was exchanging items by hand with those who approached him.  Gallegos also went to the green van where he took a cell phone from a woman who was sitting inside the van, used it and then handed it back to the woman who was in the van.  Detective Wulff observed this pattern of behavior several times.

Detective Wulff is an experienced narcotics officer.  Based on his training and experience, Detective Wulff observed that Gallegos's actions were consistent with those of someone who trafficking in illegal narcotics.

Approximately thirty minutes later, a brown Infiniti driven by Gomez-Torres arrived and parked at a McDonalds restaurant nearby.  Gallegos followed the car as it drove into the parking lot of the McDonald's restaurant.  Gallegos ran to the Infiniti and jumped inside of it on the passenger side as it rolled to a stop.

Detective Wulff and another Albuquerque police officer, Detective Luna, drove their vehicle behind the Infiniti and identified themselves as police officers.  Gallegos left the Infiniti and tried to run from the officers but was intercepted and detained by one of the officers.

Detective Wulff approached the driver's side of the Infiniti and made contact with Gomez-Torres.  Detective Wulff observed that Gomez-Torres had three cell phones on his lap.  Detective Wulff asked Gomez-Torres to exit the Infiniti and Gomez-Torres complied.  Detective Luna patted down Gomez-Torres for weapons and observed that Gomez-Torres has something in his mouth.  Detective Wulff asked Gomez-Torres to open his mouth.  Gomez-Torres complied.  Inside were colored balloons of the variety

used to package narcotics for sale. Detective Wulff asked Gomez-Torres to remove a baseball hat from his, Gomez-Torres's, head. Again Gomez-Torres complied. Detective Wulff asked Gomez-Torres to spit the balloons inside the hat, and Gomez-Torres again complied.

The balloons were filled with heroin.

## III. ARGUMENT

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. For Fourth Amendment purposes, the Supreme Court has identified three categories of police-citizen encounters: (1) consensual encounters, which are not considered "seizures" within the meaning of the Fourth Amendment, and therefore need not be supported by suspicion of criminal wrongdoing; (2) investigative stops, in which an officer may briefly detain a person based on reasonable suspicion of criminal activity; and (3) arrests, which are justified only if the officer has probable cause to believe that the subject has committed a crime. *See, e.g., Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000) (citing *Florida v. Royer*, 460 U.S. 491, 497-98 (1983)); *see Florida v. Bostick*, 501 U.S. 429, 434-36 (1991).

    A.    <u>It Is Unclear from the Record When the Detention Occurred</u>

A Fourth Amendment seizure occurs when a reasonable person would not believe he or she is free to leave. *See United States v. Martinez-Fuerte*, 428 U.S. 543, 556 (1976). The Supreme Court has held that a traffic stop constitutes a Fourth Amendment seizure. *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979) ("[S]topping an automobile

and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth Amendment], even though the purpose of the stop is limited and the resulting detention quite brief.").

Further, as the Supreme Court explained in *United States v. Mendenhall*, 446 U.S. at 556-5, that stopping or diverting an automobile in transit, with the attendant opportunity for a visual inspection of the areas of the passenger compartment not otherwise observable, is materially more intrusive than a question put to a passing pedestrian." The Court specifically recognized "the fact that the former amounts to a seizure." *Id.* at 557.

The vast majority of automobile stops are initiated by police officers using flashing lights or a siren and are clearly fourth amendment seizures. In this case, it is undisputed that the Infiniti was already stopped in the parking lot when Detective Wulff pulled his vehicle behind the Infiniti.

The Ninth Circuit evaluated a situation similar to the one in the case before the court in *United States v. Kerr*, 817 F.2d 1384, 1386 (9th Cir.1987). In *Kerr*, the police officer did not use flashing lights or a siren, but the police officer drove into a one-lane driveway, thereby blocking the path of the defendant, who had been driving out. Id. at 1385. The circuit court concluded that such police conduct constituted an investigative stop, because the police officer's "authority and conduct provided Kerr with no reasonable alternative except an encounter with the police." *Id.* at 1387.

As to whether or not a reasonable person would have felt free to leave depends on whether the police vehicle had blocked off any escape route for the Infiniti. The government plans to introduce testimony at the evidentiary hearing on this matter that

will clarify the record. The government is not being coy with the Court. It is likely that the facts as detailed at the evidentiary hearing will indicate that a seizure occurred when Detective Wulff pulled his vehicle behind the Infiniti, but the government does not wish to concede as much at this time.[2]

    B.    <u>Detective Wulff Had a Reasonable Suspicion of Criminal Activity Sufficient to Justify a Brief Investigatory Detention and Pat-down Search of Gomez-Torres</u>.

While a voluntary exchange between the police and a member of the public will not trigger the protections of the Fourth Amendment, an officer may not temporarily detain an individual for investigative purposes without "reasonable suspicion based on articulable facts." *United States v. Kerr*, 817 F.2d 1384, 1386 (9th Cir.1987).

If the officer has a reasonable articulable suspicion of criminal activity, blocking a vehicle so its occupant is unable to leave during the course of an investigatory stop is reasonable to maintain the status quo while completing the purpose of the stop. *See United States v. Doffin*, 791 F.2d 118, 120 (8th Cir.), cert. denied, 479 U.S. 861 (1986).

Detective Wulff had a reasonable suspicion that Gomez-Torres or Gallegos possessed a controlled substance with intent to distribute it and that suspicion was sufficient it to justify an investigative detention of the Infiniti. A reasonable suspicion is fact-specific and based upon the " totality of the circumstances." *United States v. Sokolow*, 490 U.S. I (1989). In light of the fact-specific nature of this inquiry, no "single factor will be dispositive in every case." *Id.* The standard is an objective one. *United*

---

    [2] The government attempted to contact Detective Wulff to obtain more details about the incident, but Detective Wulff has been ill, has been away from work, and has not been able to provide the government with additional information at the date of this filing.

*States v. Johnson*, 364 F.3d 1185, 1189 (10th Cir. 2004).

The government acknowledges also that an investigative detention must be "reasonably related in scope to the circumstances" which justified the stop in the first place, *Terry v. Ohio*, 392 U.S. 1,20 (1968), because the Fourth Amendment imposes "limitations on both the length of the detention and the manner in which it is carried out," *United States v. Holt*, 264 F.3d 1215, 1229 (10th Cir. 2001) (en banc).

When Detective Wulff approached the Infiniti both Gomez-Torres and Gallegos were inside it so his reasonable suspicion as to both men can justify the stop of the Infiniti.  Detective Wulff' had a reasonable suspicion that the one or both of the men possessed controlled substances with intent to distribute them, and that reasonable suspicion was sufficient to justify a continuing investigatory detention.

When Detective Wulff detained the Infiniti, his reasonable of criminal activity was based on the following facts.

- Detective Wulff has observed Gallegos and other people exchanging items in a parking lot;
- Detective Wulff observed Gallegos running back and forth between the green van and his customers;
- Detective Wulff observed Gallegos take a cell phone from a woman in the green van and use it while he was engaging in the transactions in the parking lot;
- When the Infiniti arrived, Detective Wulff observed Gallegos chase after the Infiniti as it entered the parking lot and jump inside it;

- The Infiniti pulled to a stop.

Based on these observations, Detective Wulff could draw the following reasonable inferences based on his training and experience:

- Gallegos was exchanging contraband for money in the parking lot;

- Gallegos was communicating with suppliers or buyers on the cell phone he took from the woman in the green van and used;

- When the Infiniti entered the parking lot, Gallegos knew who was driving it because he chased after the vehicle and jumped inside;

- The Infiniti pulled to a stop because the driver knew Gallegos and knew that Gallegos was trafficking in contraband.

Detective Wulff had a reasonable suspicion that Gallegos and/or Gomez-Torres were trafficking in controlled substances sufficient to stop the Infinity for a few seconds and to approach the driver's side window.

Gallegos fled, another indication of illegal activity. Flight may create a reasonable suspicion. In *Illinois v. Wardlow*, 529 U.S. 119 (2000), the Court observed that:

> [W]hen an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business. [citations omitted]. And any "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." *Florida v. Bostick*, 501 U.S. 429, 437, 111 S. Ct. 2382, 115 L. Ed.2d 389 (1991). But unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not "going about one's business"; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.

*Id.* at 125.

In Detective Wulff's view, Gallegos would not flee the police if there were no illegal activity?  Lastly, although it occurred after the Infiniti was stopped, Detective Wulff observed three cell phones on the lap of Gomez-Torres.  In Detective Wulff's view, a law-abiding citizen would not have three cell phones on his or her lap?

The observations that give rise to a reasonable suspicion of criminal activity may also be indicative of a lawful activity.  The purpose of the *Terry* stop is for the for the law enforcement officer to confirm one or the other.

C.   The Evidence in Gomez-Torres's Mouth Was in Plain View.

When Detective Wulff observed that Gomez-Torres has something in his, Gomez-Torres's, mouth, he asked Gomez-Torres to open his mouth.  The bags of heroin were plainly in view.

An officer's request that a defendant open his mouth, resulting in discovery of contraband is a minor intrusion that did not implicate defendant's Fourth Amendment rights.  *United States v. Torres*, 921 F.2d 196, 196 (8th Cir. 1996); *see also United States v. Weir*, 657 F.2d 1005, 1007 (8th Cir.1981); *United States v. Caldera*, 421 F.2d 152, 153 (9th Cir.1970).

## IV.  CONCLUSION

This Court should deny the Defendant's motion.

Respectfully submitted,
GREGORY J FOURATT

        United States Attorney

        <u>    Filed Electronically    </u>
        NORMAN CAIRNS
        Assistant United States Attorney
        P. O. Box 607
        Albuquerque, NM 87103
        (505) 346-7274

<u>CERTIFICATE OF SERVICE</u>

  I HEREBY CERTIFY that a true copy of this pleading was delivered electronically to counsel of record for the defendant, this 26th day of December 2009.

        <u>    Filed Electronically    </u>
        NORMAN CAIRNS
        Assistant United States Attorney